**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **GINA FELKER and** | : |
| **TODD GRUDZINSKI,** | : |
| | : |
| **Plaintiffs** | :    **CIVIL ACTION NO. 3:16-1907** |
| | : |
| **v.** | : |
| | :    **(JUDGE MANNION)** |
| **EXETER TOWNSHIP,** | : |
| **JOHN RUANE,** *et al*. | : |
| | : |
| **Defendants** | : |

# M E M O R A N D U M

Plaintiffs Gina Felker and Todd Grudzinski filed this civil rights action alleging violations of their 14th Amendment Due Process rights, pursuant to 42 U.S.C. §1983. They allege that they were part-time police officers in Exeter Township and that they met the contractual definition of this position as provided for under the Collective Bargaining Agreement ("CBA") between the Exeter Township Police Association and the Township. They allege that the CBA afforded them a continued expectation of employment/property right and entitled them to constitutional protections against termination. Plaintiffs allege that they were terminated from their positions without the procedures they were due, including a pre-termination hearing. Presently pending is plaintiffs' motion for summary judgment. Defendants Exeter Township and Supervisors John Ruane, John Coolbaugh and Donald Kreseski filed cross-motions for summary judgment arguing that plaintiffs did not meet the contractual definition of a "part-time officer" during the relevant time as called for by the

CBA in order to create a property right in their continued employment with the Township. Thus, defendants contend that they are entitled to judgment with respect to plaintiffs' constitutional claims. At issue is whether plaintiffs had a property interest protected by procedural due process in their continued employment with the Township. Based on the following, the court will **GRANT IN PART AND DENY IN PART** defendants' motions for summary judgment, (Doc. 22, Doc. 25). Defendants' motions for summary judgment will be **GRANTED** with respect to plaintiffs' claims for punitive damages against Ruane, Coolbaugh and Kreseski in their individual capacity. Defendants' motions for summary judgment will be **DENIED** with respect to plaintiffs' procedural due process claims under the 14th Amendment. The court will **GRANT** plaintiffs' motion for summary judgment, (Doc. 19), as to liability on their procedural due process claims based on their contractual right to continued employment under the CBA.

I.    **FACTUAL BACKGROUND**[1]

Grudzinski was hired as a part-time police officer with Exeter Township in 2007. He was later appointed sergeant with the Township and was second in command after Chief Nancy Smith. Grudzinski worked for Exeter Township

_____

[1]Facts are taken from plaintiffs' statement of material facts, (Doc. 20), and defendants' statements of material facts, (Doc. 23, Doc. 26), as well as from the responses thereto and the exhibits. Legal conclusions in the statements of material facts are not discussed in the factual background.

as only a part-time police officer and, at all relevant times, had a full-time job as a federal police sergeant with Tobyhanna Army Depot. Presently, Grudzinski is still working at Tobyhanna and also as a part-time officer for Hughestown Police Department.

Felker was hired as a part-time police officer with the Township in 2008. Felker only worked for Exeter Township as a part-time police officer until the summer of 2016, when she began to work full time with Mayo Striping. Due to her full-time job, she was not available for work with Exeter Township during the summer months of 2016.

Ruane, Coolbaugh and Kreseski are elected officers on the Township Board of Supervisors and they were on the Board during all relevant times.

The Exeter Township Police establish its policies through its Standard Operating Procedures ("SOPs"). (Doc. 24-4).

The Exeter Township Police Association and Exeter Township entered into a CBA effective January 1, 2016 through December 31, 2018. (Doc. 20-1, Doc. 37-1 at 49-60). The CBA was in effect during the relevant times of this case.

Article XVII of the CBA provides, in relevant part, as follows:

Prior to any disciplinary action being initiated against any member of the Exeter Township Police Department, the Chief of Police and Board of Supervisors' Police Liaison, will conduct a full investigation or inquiry regarding the facts of the case. Once the Chief of Police and Board of Supervisors' Police Liaison, have gathered, reviewed and considered all pertinent information, and

3

determined that disciplinary action is warranted, the employee will be notified of the pending action and afforded the opportunity to respond to any allegations.

Article XVII also states, "No part-time officer employed by the police department shall be terminated, removed from or reduced in rank, subjected to any disciplinary action or removed from the schedule without just cause." Acceptable reasons for disciplinary action or removal from the schedule included, in part, failing to report for schedule shift, excessive call offs from scheduled shifts, calling off from or leaving scheduled shift early to work in another agency and failing to follow Department SOPs or policies.

Article XIX, provides, "[a]t any meeting, where practical, between a representative of the Exeter Township Board of Supervisors and any full-time or part-time officer upon whom any form of discipline is to be voted upon, the employee shall have the right to be present and/or have a representative present during the meeting."

Article XXV of the CBA defines full-time and part-time police officers as follows:

> Full-time officers shall be defined as any employee who works at least forty (40) hours per week and [260] days per year. Part-time officers shall be deemed as any employee whose normal work assignment is less than that specified in the preceding sentence, and shall be scheduled for duty in accordance with Article XV.

Article XV of the CBA provided, in pertinent part, that part-time officers "will be required to submit, in writing, their monthly availability no later than the

4

14th day of the preceding month. If written availability is not received by that date, it will be assumed that the officer is unavailable to work during the upcoming month and shifts may be offered to another officer(s)."

Article XXIV of the CBA states:

Any other employment by full-time and/or part-time will not materially and adversely affect their employment with the Township. All officers shall only use Township equipment and uniforms in Exeter Township and shall not use same in any other Township or municipality. If any employee who misses his regularly scheduled shift without a valid reason, such as to work in another municipality, [t]he Township shall have the unilateral right to take action against the police officer.

Felker did not submit a schedule with her availability to the Township for the months of June, July, and August 2016 pursuant to Article XV of the CBA due to her full-time position at Mayo Striping.

Grudzinski stated that he believes he submitted availability for July 2016, but he initially did not recall if he submitted his availability for the month of August 2016. However, he later stated that he "absolutely" submitted his availability for August and worked in August. He also testified that he may have called off one or two shifts in August, and that his availability was mostly limited to third shift. He stated the supervisors then ended the third shift since the State Police provided coverage for that shift.

Grudzinski did not submit his availability to the Township for the month of September 2016. He stated that he had a conversation with Smith at that time and told her that he could not commit to a written availability. He told

Smith that "[he] didn't have an availability for patrol [in September 2016] [due to the lack of a third shift and due to his new work schedule with Tobyhanna which was conflicting with the patrol shifts for the Township]." He stated that Smith told him she was authorizing him to come in and work his criminal cases during this time he was not available for patrol. He indicated that he understood Smith to mean that he could still work for the Township during September in order to work on criminal cases and that he would get paid for the work. (Doc. 27-1 at 65-66, 68, 74-80, 129).

Grudzinski testified that at times he called off scheduled shifts with the Township due to his work requirements at his full-time job with Tobyhanna for training and mandatory overtime.

Grudzinski testified that there was no requirement that he had to submit his availability as a condition of employment, and that there was no penalty if a part-time officer did not submit availability. (Doc. 27-1 at 127, 129). Further, both plaintiffs testified that they discussed the fact that they were not going to submit their availability with the Police Chief Nancy Smith and that Smith did not say anything or indicate that there was a problem. (Doc. 24-1, at 38-39) (Doc. 27-1 at 65-66, 74, 76).

Felker testified that in addition to advising Smith in about May 2016, that she was not submitting her availability during the summer months and that she would be back in September 2016, she made two supervisors aware that she was not submitting her availability for the summer since she spoke to

them, namely, Robert Kile and Kreseski. She stated that Ruane was also aware of this through police liaison, Ben Gadomski. (Doc. 24-1 at 38-39).

On September 7, 2016, a vote was held at a regularly scheduled monthly Board of Supervisors' meeting to lay off part-time police officers who had not submitted availability in the past two weeks. The vote was in response to a police report from Chief Smith. Coolbaugh and Ruane motioned for the lay off, and Coolbaugh, Ruane and Kreseski approved of the motion. (Doc. 27-2 at 1). The minutes of the meeting stated:

> Motion by Coolbaugh second by Ruane to lay off part-time police [officers] who have not shown up for their schedule of shifts [and] haven't turned in their availability to work and who haven't worked in the last two weeks. Vote: Coolbaugh, Ruane and Kreseski - yes Kile- no.

(Id.).

At the meeting, there was no specific mention of any name regarding the part-time officers who would be effected by the vote.

Ruane testified that "[the supervisors] did not vote to terminate [the plaintiffs]", rather "[the supervisors] voted to lay them off" since "[t]hey never gave an availability for the schedule." Ruane also stated that because Smith advised the supervisors that plaintiffs were not showing up for work and not submitting any paperwork regarding their availability, the supervisors voted to lay them off and remove them from the schedule. Ruane stated that the supervisors had no reason to doubt Smith and that she was in charge of the police department. Ruane further stated that police officers are supposed to

hand in their availability to the chief every month so that they can be put on the schedule. He stated that based on these circumstances, he did not know whether the supervisors, under the CBA, had to provide plaintiffs with an opportunity to respond to the reasons why they were being laid off. (Doc. 24-8 at 11-12, 27, 32-33).

There is no dispute that defendants did not provide plaintiffs with notice that they were going to be laid off, with an opportunity to respond to the allegations against them, or with a hearing prior to the vote to lay them off. (Doc. 24-8). There is also no dispute that plaintiffs were removed from the roster after the vote and, that they had to hand in their keys, badges and MOPEC cards. Nor is it disputed that plaintiffs could not work for the Township without their badges and their MOPEC cards. (Id. at 19-21).

On September 12, 2016, Smith advised Felker in a letter regarding the vote of the Board and stated:

> At the September 7, 2016 Township Meeting, the Exeter Township Supervisors removed you from the Exeter Township Police Dept. roster for not giving your work availability since May, 2016. Please return your badge, key and MOPEC card as soon as possible.

(Doc. 24-7).

The day after the vote, Smith left a voicemail message for Grudzinski and said "the board of supervisors fired you last night" and, she later told him it was because he had not worked in two weeks. (Doc. 27-1 at 79-80).

8

On September 12, 2016, Smith advised Grudzinski in a letter regarding the vote of the Board and stated:

> At the September 7, 2016 Township Meeting, the Exeter Township Supervisors removed you from the Exeter Township Police Dept. roster for not working as scheduled and not giving your September 2016 availability. Please return your badge, key and MOPEC card as soon as possible.

(Doc. 27-6).

Ruane and Coolbaugh testified that the vote taken was for a layoff of part-time officers specified in the vote which included Grudzinski and Felker. Kreseski did not testify that he would characterize the employment decision of the Board as a termination of plaintiffs. (Doc. 24-8).

Plaintiffs testified that they believed they were fired by defendants. Grudzinski testified that Chief Smith called him on September 8, 2016 and, left a voicemail message in which "[s]he requested my badge, my keys, my MOPEC card, and said the board of supervisors fired you last night." (27-1 at 79, 107). Grudzinski also stated "the reason that Chief Smith gave for my termination was, I didn't work in two weeks [in September 2016], and they all saw me represent Exeter Township in the [district justice court] at [a] preliminary hearing that occurred approximately a week before the motion for termination." Felker also stated that she was told by Smith in a voicemail message to turn in her MOPEC card, her badge and her keys, and that the supervisors voted at a meeting that she will no longer be on the roster. (Doc.

28-1 at 69).

Additionally, plaintiffs state that they were not laid off and that they were terminated based on the fact that their Exeter Township badge, keys and MOPEC cards were taken away from them. However, defendants never stated to plaintiffs that they were terminated.

Defendants did not give plaintiffs a hearing at any time regarding the vote and the decision the supervisors made on September 7, 2016. Nor were plaintiffs given notice, the evidence against them, or an opportunity to present their position and to rebut any allegations against them prior to being laid off.

Neither plaintiff pursued any formal recourse with the defendants regarding the vote before they filed the instant action on September 19, 2016. However, Grudzinski testified that when he went to the police station to turn in his badge, card and keys, about a week after he was notified that he was removed from the schedule, he told Smith that he wanted to file a grievance regarding his alleged termination and the failure to give him a hearing under the CBA. However, he thought that Smith, as the head of the Collective Bargaining Unit and the union, had to file a grievance on his behalf. He stated that Smith did not file a grievance for him and stated "what do you want me to do?" He then stated that Smith refused to file a grievance on his behalf.

Grudzinski also asked Smith why "I was being fired for not working in two weeks when I worked in court, and I physically saw Jack Ruane" and that Ruane waved at me. Grudzinski then testified:

Smith called the solicitor to explain the situation that I did work in two weeks. Solicitor stated that, oh, if that's the case. [The vote] didn't apply to him. Nancy asked me if I could work her shift, I think, two days later. I said yes. She called me the night before [he was to work Smith's shift], said she spoke with the board of supervisors, and they said it did apply to [me].

(Doc. 27-1 at 81-83).

## II.    PROCEDURAL BACKGROUND

On September 19, 2016, plaintiffs filed their complaint, (Doc. 1), raising a constitutional claim pursuant to 42 U.S.C. §1983. Specifically, they each raise a single claim against the Township and the three supervisors, Ruane, Coolbaugh and Kreseski, for violation of the 14th Amendment Due Process Clause by allegedly terminating their employment on September 7, 2016, without being afforded any pre-termination process. The supervisors are sued only in their individual capacity. Plaintiffs allege that Ruane, Coolbaugh and Kreseski were official policymakers of the Township and, that they engaged in official policy, custom, and decision to fire plaintiffs without due process. Plaintiffs also allege that the Township failed to train its officials to provide its employees with pre-termination due process and to abide by the CBA.

As relief, plaintiffs seek reinstatement, lost wages, damages for emotional distress, as well as attorney fees and costs, delay damages, and punitive damages only against the three individual defendants.

On October 12, 2016, defendants filed an answer to the complaint with

affirmative defenses. (Doc. 8).

On August 28, 2017, plaintiffs filed their motion for summary judgment pursuant to Fed. R. Civ. P. 56(c). (Doc. 19).

On September 5, 2017, defendants filed a motion for summary judgment against Felker, (Doc. 22), and they filed a separate motion against Grudzinski, (Doc. 25).

The parties filed their statements of material facts along with their respective motions as well as their briefs in support and exhibits. All of the parties filed reply briefs regarding their respective motions.

This court has jurisdiction over this action pursuant to 28 U.S.C. §§1331 and 1343. Venue is appropriate in this court since the alleged constitutional violations occurred in this district and all parties are located here. *See* 28 U.S.C. §1391.

## III.    LEGAL STANDARDS

<u>Summary Judgment Standard</u>

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also* Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute

12

is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. [Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)](); [Aetna Casualty & Sur. Co. v. Ericksen, 903 F. Supp. 836, 838 (M.D. Pa. 1995)](). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." [Anderson, 477 U.S. at 249](); *see also* [Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)]() (a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. [Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007)]().

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. [Celotex, 477 U.S. at 323-24](). The moving party can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." [In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003)](); *see also* [Celotex, 477 U.S. at 325](). If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. [Boyle v. County of Allegheny,]()

139 F.3d 386, 393 (3d Cir. 1998) (*quoting* Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986)). However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." Celotex Corp., 477 U.S. at 322-23; Jakimas v. Hoffman La Roche, Inc., 485 F.3d 770, 777 (3d Cir. 2007).

### §1983 Standard

Plaintiffs bring their constitutional claims pursuant to 42 U.S.C. §1983. Section 1983 does not itself bestow substantive rights, but instead creates a remedy for violation of a person's constitutional rights. Gonzaga Univ. v. Does, 536 U.S. 273 (2002). The statute provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . . 42 U.S.C. §1983.

To establish a claim under §1983, a person must prove that someone deprived him of a constitutional right while acting under the color of state law. Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).

Liability under §1983 is personal in nature and can only follow personal

involvement in the alleged wrongful conduct shown through specific allegations of personal direction or actual knowledge and acquiescence. *See* [Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997)](#) (citing [Rhode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)](#)); *see also* [Kokinda v. Breiner, 557 F. Supp. 2d 581, 587 (M.D. Pa. 2008).](#) A municipality is a "person" for purposes of §1983. *See* [Bd. of the County Comm'rs of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 403 (1997)](#) (citing [Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 689 (1978)](#)). But §1983 does not allow municipal liability under a theory of respondeat superior. Id. A municipality is not liable under §1983 merely for employing someone who violates a person's civil rights; rather, a municipality that does not directly violate a person's civil rights is liable only where it has in place a policy or custom that led to the violation. Id. The plaintiff bears the burden of identifying the policy or custom. Id. This rule ensures that a municipality will only be liable where it is the "moving force" behind the plaintiff's injury. Id.

## IV.    DISCUSSION

Plaintiffs' claims relate to their employment as a part-time police officers with Exeter Township. Plaintiffs allege that the vote held at the Township monthly meeting regarding part-time police officers who had not submitted their availability in the past two weeks violated the CBA and their due process rights. Plaintiffs contend that they had a protected right to their continued

employment with Exeter Township and were protected by the CBA, which provided that they could not be terminated without just cause, and that their due process rights were violated when defendants failed to give them any due process protections prior to their terminations. They argue that they were terminated from their employment, as opposed to being laid off, and that they were not provided notice of the charges and the evidence against them, an opportunity to present their side, and a hearing before the Board prior to their termination.

### 1. Punitive Damages

The court will first address defendants' contention that plaintiffs' claims for punitive damages should be dismissed with prejudice. In their complaint, plaintiffs allege that they are entitled to punitive damages against Ruane, Coolbaugh and Kreseski.

With respect to punitive damages for a §1983 violation, this remedy is only available "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30 (1983). Regarding federal civil rights claims, "reckless indifference" refers to the defendant's knowledge of the illegality of his actions, not the egregiousness of his actions. Alexander v. Riga, 208 F.3d 419, 431 (3d Cir. 2000) (citing Kolstad v. Am. Dental Ass'n, 527 U.S. 526, 536 (1999)).

It is well settled that the Supreme Court has held punitive damages may

16

not be awarded against municipalities under §1983. *See* [City of Newport v.](#) [Fact Concerts, Inc., 453 U.S. 247, 271 (1981)](#). As such, punitive damages are not permissible against Exeter Township, nor are punitive damages permissible against Ruane, Coolbaugh and Kreseski in their official capacity. *See* Yelland v. Abington Heights School District, 2017 WL 529837 (M.D.Pa. Feb. 9, 2017).

Plaintiffs have sued Ruane, Coolbaugh and Kreseski in their individual capacity. Defendants argue that plaintiff has failed to properly state a claim for punitive damages against Ruane, Coolbaugh and Kreseski in their individual capacity. Plaintiffs argue that "Defendants knew they had a CBA and that they could not remove Plaintiff[s] as [ ] employee[s] unless cause existed, yet they went ahead and removed Plaintiff[s] as [ ] employee[s] anyway. Consequently, Defendants actions were reckless and done with malice, which is noted by Defendants intentionally ignoring the requirements of their own [CBA]." (Doc. 33 at 10).

Although the court finds below that plaintiffs have established Ruane, Coolbaugh and Kreseski violated their due process rights under §1983, to the extent that plaintiffs' claims are based on a contractual right to continued employment with the Township, it finds that plaintiffs have not established "reckless indifference" regarding the knowledge of Ruane, Coolbaugh and Kreseski of the illegality of their actions to seek punitive damages *See* [Alexander v. Riga, 208 F.3d at 430-31](#). The evidence in this case fails to show

that Ruane, Coolbaugh and Kreseski, in their individual capacity, took any actions against either plaintiff which was done willfully, wantonly, and maliciously.

Thus, defendants' motions for summary judgment will be **GRANTED** with respect to plaintiffs' claims for punitive damages against Ruane, Coolbaugh and Kreseski in their individual capacity.

### 2. Exhaustion

There is no general exhaustion requirement for a claim under 42 U.S.C. §1983. *See Patsy v. Board of Regents of State of Florida, 457 U.S. 496*. However, where plaintiffs, as here, bring a claim for violation of the right to procedural due process, they "must have taken advantage of the processes that were available, unless those processes were patently inadequate." Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000). Where there is an available grievance process, a plaintiff alleging a procedural due process violation must pursue that process before seeking redress in the courts, unless the grievance process is blocked or there is evidence that it is a sham. Garzella v. Borough of Dunmore, 280 Fed. Appx. 169, 173 (3d Cir. 2008). The failure to exhaust remedies under a CBA is an affirmative defense. *See* Wright v. Universal Maritime Services Corp., 525 U.S. 70, 75 (1998)(referring to failure to exhaust remedies under a CBA as an affirmative defense).

As one of their affirmative defenses contained in their answer to the complaint, defendants assert that "Plaintiffs' claims are barred by failure to

exhaust administrative remedies." (Doc. 8 at 6). Also, in their statements of facts, defendants state that plaintiffs did not seek any formal recourse with them after receiving the September 12, 2016 letters from Smith. The court finds that even though plaintiffs did not submit a grievance to the Board of Supervisors or to Smith after the September 7, 2016 vote to lay them off, there is no mention of an administrative remedy process and no requirement in the CBA that an officer had to exhaust his/her remedies under the CBA by filing a grievance prior to filing an action in court. Additionally, Grudzinski testified that Smith refused to file a grievance for him after he told her that he wanted to submit one, thus thwarting any effort to do so.

Therefore, based on the CBA and Grudzinski's testimony, the court cannot say that plaintiffs failed to follow any grievance procedures. Moreover, even if it were true that plaintiffs failed to utilize any post-termination processes which may have been afforded by the CBA, they would still be entitled to challenge their pre-termination process. Savokinas v. Pittston Twp., 2006 WL 2382256 (M.D. Pa. Aug. 16, 2006)(*citing* Alvin, 227 F.3d, at 120)). Accordingly, the court will not dismiss plaintiffs' due process claims on the ground that plaintiffs did not pursue a grievance.

### 3. Due Process - Plaintiffs' Employment

Plaintiffs raise a §1983 claim against all defendants for violation of the Due Process Clause of the 14th Amendment in the alleged termination of their employment as part-time police officers without providing them with notice

and a hearing prior to their termination as required under the CBA. Plaintiffs move for summary judgment since the undisputed evidence shows that they did not receive any due process rights prior to their alleged terminations. Defendants have moved for summary judgment on the due process claims on the grounds that there are no genuine issues of material fact that plaintiffs did not qualify as part-time officers under the CBA at the time they were laid off. As such, defendants contend that plaintiffs were not entitled to the due process protections afforded by the CBA prior to being laid off.

"[A] procedural due process analysis involves a two step inquiry: (1) does the complaining party have a protected liberty or property interest and, if so, (2) does the available process comport with all constitutional requirements." Bowen v. Ryan, 2006 WL 3437287 (M.D. Pa. Nov. 29, 2006) aff'd, 248 Fed. Appx. 302 (3d Cir. 2007); *see also* Shoats v. Horn, 213 F.3d 140, 143 (3d Cir. 2000). To have a property interest in a job, "a person must have more than a unilateral expectation of continued employment; rather, she must have a legitimate entitlement to such continued employment." Hill, 455 F.3d at 234 (*citing* Elmore v. Cleary, 399 F.3d 279, 282 (3d Cir. 2005)). Whether a legitimate entitlement exists is a question of state law. Hill, 455 F.3d at 234. After a property interest is found to exist, federal law governs the adequacy of the procedures employed to protect it. *See* Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 545 (1985). All that is required at the pre-termination stage is "notice of the charges against him, an explanation of the

employer's evidence, and an opportunity to present his side of the story." Schmidt, 639 F.3d at 590 (3d Cir. 2011) (*citing* Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 545 (1985)).

"A governmental employee [in Pennsylvania] only has a ... property right in his employment where he can establish a legitimate expectation of continued employment through either a contract or a statute." Pipkin v. Pennsylvania State Police, 548 Pa. 1, 693 A.2d 190, 193 (Pa.1997). "Pennsylvania has long-held that there is an 'extremely strong presumption' in favor of at-will employment where there is no contractual relationship between the employer and employee." Stevens v. Telford Borough, 2014 WL 40569522014, *6 (E.D. Pa. Aug. 14, 2014)(citation omitted). Further, "[i]n Pennsylvania, an at-will employee 'does not have a legitimate entitlement to continued employment because [he/she] serves solely at the pleasure of [his/her] employer.'" Id. (citing Hill, 455 F.3d at 234). Thus, "a part-time employee [in Pennsylvania]–-in the absence of a contractual agreement to the contrary—can be fired for any reason at any time." Id.

The court must first determine whether plaintiffs had a protected interest in their continued employment with the Township. In Dombrosky v. Banach, 2012 WL 1899656, *9 (M.D.Pa. May 24, 2012), *aff'd* 557 Fed.Appx. 107 (3d Cir. 2014), the court held that "federal district courts in Pennsylvania have recognized that the Police Tenure Act creates a constitutionally protected property interest in an individual's employment as a police officer." (citations

omitted). However, our plaintiffs cannot rely upon Pennsylvania's Police Tenure Act, 53 P.S. and C.S.A. §§811–816, since they were not employed by the Township as regular full time police officers. The Act, §812, provides: "No person employed as a regular full time police officer in any police department of any township of the second class ... with the exception of policemen appointed for a probationary period of one year or less, shall be suspended, removed, or reduced in rank except for" specific enumerated reasons.

Similar to part-time Township police officers, this court held that under the Pennsylvania Borough Code, 8 Pa.C.S. §1190(a), "borough police officers who work on a full-time or salaried basis have a protected property interest in their employment, while those working on a part-time, hourly, or daily basis do not." Saranchuk v. Lello, 2017 WL 45737422017, *5 (M.D.Pa. Oct. 13, 2017) (citing Mariano v. Borough of Dickson City, 2014 WL 5795679, at *5 (M.D.Pa. Nov. 6, 2014).

Further, insofar as plaintiffs raise for the first time Act 111, 43 P.S. §217.1, as a statutory source for providing them with a protected property right in their continued employment with the Township, the court finds that Act 111 was not raised in plaintiffs' complaint, (Doc. 1), nor was it raised in plaintiffs' motion for summary judgment and supporting brief. The court finds that plaintiffs are attempting to expand upon their due process claim in their opposition brief to defendants' summary judgment motions, however, "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition

to a motion to dismiss." Pennsylvania ex rel. Zimmerman v. Pepsico, Inc., 836 F.2d 173, 181 (3d Cir. 1988) (citation omitted). Additionally, as defendants point out, (Doc. 27 at 7), plaintiffs' untimely reliance on Act 111 is misplaced, and "43 P.S. §217.1 merely stands for the proposition that police personnel have the right to collectively bargain." *See* 43 P.S. §217.1 (granting police officer and firefighters employed by a political subdivision of Pennsylvania the right to engage in collective bargaining). Defendants also point out that "Act 111's sole remedy is binding arbitration which necessarily would take this case out of this Court's jurisdiction." (citing 43 P.S. §217.4).

Since state statutory law does not confer a property interest upon the plaintiffs, they must rely upon the CBA to show that it conferred a right of legitimate entitlement to continued employment. *See* Saranchuk, 2017 WL 45737422017, *5 (This court held that "[t]he plaintiffs' only other potential source of a protected property interest would be the collective bargaining agreement that was supposedly extended to cover the plaintiffs here.")."[I]t is the precise terms of a collective bargaining agreement that can confer a property interest, not the agreement's mere existence alone." Id. (citations omitted). In Bechtel Power v. Wyoming Valley, 496 F.Supp. 175, 177 (M.D. Pa.1980), the court stated:

> A collective bargaining agreement is a contract between the
> parties and must be examined in light of the usual principles of
> contract interpretation as well as in light of federal policy. Where
> the language of the contract is clear and unambiguous and leads

to a meaning which is both reasonable and sensible there is no need to look beyond it in search of some other intention.

"The Pennsylvania legislature has empowered local governments to enter into collective bargaining agreements that govern the terms and conditions of employment, such as requiring 'just cause' to discipline employees." Hillborn v. Cordaro 2007 WL 2903453, *5 (M.D.Pa. Sept. 28, 2007) (citing 43 P.S.A. §1101.701). Moreover, the Third Circuit has found that collective bargaining agreements are binding on individual members. *See* Sebrowski v. Pittsburgh Press Co., 188 F.3d 163 (3d Cir. 1985); Barnard v. Lackawanna County, 194 F.Supp. 3d.337 (M.D.Pa. 2016).

The parties have submitted the complete CBA as evidentiary support for their respective positions. Plaintiffs maintain that their property right arises from the "just cause" provision in the CBA, Article XVII, which provides that part-time officers shall not be terminated or removed from the schedule without just cause. Plaintiffs state that there is no dispute that they were removed from their part-time jobs without due process. Further, both plaintiffs offer explanations as to why they did not comply with the specific requirements of the CBA. Felker explained that she made Smith and defendants aware that she would not be available during June through August of 2016 due to her full-time job requirements. Grudzinski stated that he told Smith he could not work any shifts in September 2016 and, that she authorized him to come in and work on his criminal cases during the month,

as he had done in the past. Grudzinski also stated that he appeared in Magisterial District Court on behalf of the Township a week before he was laid off and that Ruane saw him at court. Article X of the CBA provided that "[i]f an officer must appear in court outside of his regularly scheduled shift, he would be paid his regular hourly rate." Plaintiffs indicate that defendants essentially acquiesced to their absences during the stated times and left them with the impression that there was no problem with their resuming their work as part-time officers after September. Thus, both plaintiffs argue that they qualified as part-time officers at the time they were basically terminated and, therefore were entitled to the procedural due process rights under the CBA prior to being terminated. They argue that since there is no dispute that they did not receive any of the due process protections provided in the CBA prior to being removed from the roster, they are entitled to summary judgment of their due process claims.

Defendants contend that plaintiffs did not meet the prerequisites to be covered by the CBA at the time they were laid off. Thus, defendants contend that plaintiffs failed to establish they qualified as protected parties under the CBA, and that plaintiffs had no constitutionally protected property interest in continuing their employment as part-time Township police officers. Defendants base their assertion on Article XXV of the CBA which defines a part-time officer as one who "shall be scheduled for duty in accordance with Article XV." They then state that Article XV provides that part-time were

required "to submit, in writing, their monthly availability no later than the 14th day of the preceding month."

With respect to Felker, defendants point out that she admitted that she failed to submit her availability for July, August, and September of 2016, due to her full-time employment and, thus she was not scheduled for work during those months. As such, defendants argue that since Felker was undisputedly not on the schedule for those three months, she failed to meet the definition of a part-time officer under Article XXV of the CBA. They state that "[Felker] relinquished the alleged protections of the CBA in failing to submit availability for just one shift at some point relevant to the vote taken by [the supervisors]", and that "[t]his unilateral decision by [Felker] clearly reverts her status, at best, to one of at-will employment and nullifies any continued entitlement to employment as required for a §1983 claim (i.e. property interest)." (Doc. 24 at 8). Thus, defendants argue that Felker was not entitled to any type of due process protections prior to being laid off. They cite to Hillborn, 2007 WL 2903453, *5, in which the court found that the CBA expressly excluded the Deputy Warden of the county prison from the bargaining unit, and as such, found he had no property interest in continued employment as Deputy Warden.

With respect to Grudzinski, defendants state that since he admits he was not scheduled for duty in September 2016 and since he did not submit his availability for September, he fails to show that he was a part-time officer

at the time he was laid off under Article XXV and XV of the CBA. Defendants also point out since Articles XXV and XV of the CBA specified the express definition of a part-time officer, Grudzinski's belief that he was a part-time officer is not relevant.

In this case, while it is correct that plaintiffs failed to comply with the express terms of the CBA by failing to submit in writing their monthly availability for September 2016, no later than August 14, 2016, as required by Article XV, and by not being on the schedule in September 2016, as required by Article XXV which defined a part-time officer as one who "shall be scheduled for duty in accordance with Article XV", the CBA did not state that termination or lay off was the sanction for plaintiffs' non-compliance.

Under the specific terms of the CBA, the court finds that plaintiffs still qualified as part-time officers at the time that they were laid off and, thus, plaintiffs were entitled to the due process protections afforded such officers prior to being laid off. Article XV of the CBA provided only that if a part-time officer failed to submit his written monthly availability by the 14th day of the preceding month, "it will be assumed that the officer is unavailable to work during the upcoming month and shifts may be offered to another officer(s)." Significantly, Article XV did not expressly state that the failure of the part-time officer to submit his availability by the stated date would result in the officer not being deemed a part-time officer or, that it would result in him being laid off or terminated. Rather Article XV merely stated that officer would be

deemed unavailable to work during only the upcoming month and that shifts may be offered to another officer. This is a far cry from defendants' interpretation of this Article upon which they base their assertion that plaintiffs were not part-time officers in September 2016 by definition, and thus were not entitled to the due process protections afforded such officers in the CBA. Thus, as plaintiffs contend "there was no penalty [of termination or being laid off in the CBA] if a part-time officer did not submit availability." In fact, as plaintiffs state they "discussed [their] availability [for September 2016￼ with the Police Chief" and the supervisors and nobody indicated that there would be a problem for them to remain as part-time officers.

Indeed, the court understands quite clearly why the submissions of availability was required in advance for part-time officers in the Township, i.e., to ensure there would be adequate police coverage for its citizens at all times. Further, the court also recognizes that it may have been a legitimate decision by the supervisors to lay off part-time officers who did not submit their availability to work and who did not work in the past two weeks. However, the court finds that it was incumbent upon the supervisors to afford the part-time officers, such as plaintiffs, the procedural due process protections specified in the CBA before they were laid off since, as discussed, the CBA did not expressly provide that they were no longer part-time officers due to their failure to submit their availability. Rather, the CBA only provided that plaintiffs would be deemed unavailable for the month in question, i.e., September

2016. The court finds that the case of Hillborn, 2007 WL 2903453, *5, cited by defendants to be inapplicable since the CBA did not expressly exclude plaintiffs from being part-time officers despite their failures to submit their availability for September 2016.

Thus, the undisputed evidence shows that both plaintiffs still met the specific requirements of the CBA in September 2016 to qualify as part-time officers. Therefore, plaintiffs possessed a contractual right to continued employment with the Township under the CBA at the time that they were laid off. Since the court finds that plaintiffs were part-time officers in September 2016 with the Township, they could not be laid off without having been first provided the full panoply of the due process protections contained in the CBA, including notification of the pending action and being afforded the opportunity to respond to any allegations.

## V.    CONCLUSION

In light of the above, **IT IS HEREBY ORDERED THAT** defendants' motions for summary judgment, (Doc. 22, Doc. 25), are **GRANTED** with respect to plaintiffs' claims for punitive damages against Ruane, Coolbaugh and Kreseski in their individual capacity. Defendants' motions for summary judgment are **DENIED** as to liability on plaintiffs' procedural due process claims under the 14th Amendment to the extent that these claims are based on a contractual right to continued employment with the Township. Plaintiffs'

motion for summary judgment, (Doc. 19), is **GRANTED** as to liability on their procedural due process claims based on their contractual right to continued employment under the CBA. Judgment will be **ENTERED** in favor of the plaintiffs and against defendants as to liability on the plaintiffs' procedural due process claims.

Additionally, the court, by separate order, will schedule a jury trial to determine the limited issue of plaintiffs' damages for defendants' deprivation of their procedural due process rights. *See* Isbell v. Bellino, 962 F.Supp.2d 738 (M.D.Pa. 2013). An appropriate order shall issue.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: January 29, 2018**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2016 MEMORANDA\16-1907-01.wpd